USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENIUS GROUP LIMITED,

Petitioner,

-against-

LZG INTERNATIONAL, INC.,

Respondent.

1:26-cv-03961-MKV

ORDER VACATING
TEMPORARY RESTRAINING
ORDER AND DENYING
PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

**BACKGROUND**

Familiarity with the long and convoluted history of this matter is presumed.  *See Genius Group Limited v. LZG International, Inc. et al*, 1:24-cv-08464-MKV (S.D.N.Y. filed Nov. 7, 2024) (the "Stayed Action").  Suffice it to note that this is a proceeding to confirm, [ECF No. 1] (the "Petition" or "Pet.")—or vacate, [ECF No. 16]—an arbitration award, [ECF No. 6-1] (the "Final Award").  The Final Award, *inter alia*, "[a]wards" Petitioner Genius Group Limited ("Genius") "recission of" a contract with Respondent LZG International, Inc. ("LZGI") (the "Asset Purchase Agreement"), and, "[b]ased on th[at] award of recission . . . , orders [LZGI] . . . to pay [Genius] . . . $ 6,595,180.00 . . . , which is the amount that [Genius] paid [LZGI] in connection with the Asset Purchase Agreement."  Final Award ¶¶ 375(d)–(e).

As immediately relevant here, Genius moved ex parte for injunctive relief intended to freeze $600,000 awarded to LZGI in the settlement of a separate derivative action[1] (the "Settlement Funds").  *See* [ECF No. 20]; [ECF No. 21] (the "Benzenberg Declaration" or "Benzenberg Decl.") ¶ 10.  This is necessary, Genius insists, "[t]o ensure that Genius has any chance of recovering even

---

[1] *See Carey v. Moe*, Case No. 2024-019773-CA-01 (Fla. 11th Jud. Cir. Ct.) (the "Florida Action").

1

a paltry portion of the Final Award," since LZGI is "approaching insolvency." [ECF No. 22] (the "TRO Application" or "TRO App.") at 1, 7.

Upon receipt on June 15, 2026, the Court provisionally granted the TRO Application, solicited further briefing, and set a hearing on Genius' concomitant request for a preliminary injunction. [ECF No. 23] (the "TRO"). While expressing its skepticism concerning Genius' failure to give prior notice to LZGI, the Court ultimately noted that, in any event, "Genius [had] publicly filed its motion on the docket in this case, in which [LZGI] has appeared and participated." TRO at 1. The Court also denied Genius' request for an exemption from the requirement to post security; the TRO was expressly conditioned upon receipt of a bond. *Id.* at 1–2.[2]

Shortly thereafter, LZGI filed two letters in quick succession objecting to the TRO, which had not yet gone into effect. [ECF Nos. 24, 25] (the "First" and "Second Opposition Letter" or "Opp. 1" and "Opp. 2," respectively). Of particular note, the First Opposition Letter pointed out that Genius had "omitted from its papers the controlling line of authority—following the Supreme Court's landmark decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)—that federal courts have no power to enter preliminary injunctions to encumber assets of a defendant to secure a money recovery before judgment." Opp. 1 at 1.

Genius immediately responded, frantically accusing counsel for LZGI of "mak[ing] false representations" in the Second Opposition Letter and seeking to strike both the First and Second Opposition Letters as procedurally improper. [ECF No. 28] (the "Procedural Reply" or "Reply 1") (cleaned up). Genius addressed the substance of the First Opposition Letter only briefly in a footnote. *Id.* at 3 n.6.

---

[2] Genius subsequently posted the bond. [ECF No. 27].

The Court contemporaneously issued an Order indicating that the First and Second Opposition Letters would be accepted in lieu of the further briefing contemplated in the TRO, and directing Genius to show cause why the TRO should not be vacated and the request for preliminary injunctive relief should not be denied. [ECF No. 29]. Genius did so. [ECF No. 31] (the "Second Reply" or "Reply 2").

Before proceeding to its analysis, the Court notes that counsel in this case have been repeatedly admonished for their incessant communications with Chambers—ranging from letters to emails to phone calls, typically involving bickering, accusations, and demands for immediate action. *See, e.g.*, the Stayed Action, [ECF No. 105]. This admonition bears repeating, because Catafago Fini LLP has only recently appeared in this saga, and because counsel for both Parties have in connection with this TRO Application once again pressed the bounds of acceptable conduct in their communications with Chambers.

## ANALYSIS

The Court is of the opinion that, under *Grupo Mexicano*, 527 U.S. 308, it lacked authority to issue the TRO.[3] This is a close call, made more difficult by the manner in which Genius presented—or rather declined to present—the central issue. *See* N.Y. R. of Prof. Conduct 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]"); Fed. R. Civ. Pro. 65(b)(1)(B). Nevertheless, for the reasons that follow, the Court vacates the TRO and denies the request by Genisus for preliminary injunctive relief.

"*Grupo Mexicano* . . . stands for the rather unremarkable observation that in a claim for contractual money damages, 'before judgment (or its equivalent) an unsecured creditor has no

---

[3] Given this conclusion, the Court need not address the Parties' arguments regarding alternative bases for vacating the TRO and denying the preliminary injunction. *See* Opp. 2; Reply 1; [ECF No. 32].

rights at law or in equity in the property of his debtor.'" *Leadenhall Cap. Partners LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155, 161 (2d Cir. 2026) (quoting *Grupo Mexicano*, 527 U.S. at 330). The Court rejects Genisus' argument that "the Final Award is akin to a judgment that places Genius in the position of seeking a creditor's bill injunction." Reply 2 at 3 n.2. The reason the Parties are still before the Court is because the Final Award is not yet a judgment. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("An unconfirmed award is a contract right" that a party may seek to have converted into "a judgment of the court" in order to access the "variety of remedies available to enforce [a] judgment.").

In the meantime, Genius may "not interfere with [LZGI's] use of [its own] property," *Grupo Mexicano*, 527 U.S. at 320,[4] unless Genius has either 1) a lien against that property or 2) an equitable interest in it.[5] *Leadenhall*, 171 F.4th at 161. Genius has neither with respect to the Settlement Funds.

Genius "does not—because it cannot—assert that it has a current legal right to, or interest in, [LZGI]'s assets" in the form of "a lien." *Leadenhall*, 171 F.4th at 163. Instead, it argues that it seeks "injunctive relief . . . to protect equitable relief." TRO Reply at 2 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)).

But this argument also fails. Genius seeks to vindicate a "general interest in receiving compensation," not "an equitable interest . . . in ***particular*** property." *Leadenhall*, 171 F.4th at

---

[4] As LZGI points out, while insolvency supports a finding of irreparable harm, *see* TRO at 1 (citing *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)), there is no insolvency exception to the judgment requirement identified in *Grupo Mexicano*. *See* Opp. 1 at 2 (acknowledging *Brenntag*, 175 F.3d 245), 1 (but noting that, in this context, "that particular exception does not exist." (quoting *Grupo Mexicano*, 527 U.S. at 320 n.4.)).

[5] Another option, as Genius apparently recognized, was to seek relief in the Florida state court where the Florida Action is pending. *See* Benzenberg Decl. at 4 n.1. This Court, however, will not serve as a surrogate forum for that litigation.

163 (emphasis original).[6]  That point is driven home by the fact that the TRO Application concerns a "fungible" sum, *Leadenhall*, 171 F.4th at 164, that purportedly entered LZGI's possession only earlier this week.  *Compare* TRO Application ¶ 1(a) (seeking, on June 15, to enjoin the disposition of "$600,000 [LZGI] stands to receive"); *with* Reply 2 at 9 (indicating, on June 17, that LZGI now "has received" that money).

"To be sure, a preliminary injunction may restrain fungible assets like money without identifying particular property, but only 'where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief.'"  *Leadenhall*, 171 F.4th at 164 (quoting *Gucci America, Inc. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014)).  Genius is not ultimately seeking an "equitable remedy" like "an accounting of profits."  *Gucci America.*, 768 F.3d at 130.  Instead, Genius is seeking confirmation of an arbitration award and "judgment" in "the amount of $7,971,168.53."  Pet. at 8.

That the arbitrator apparently awarded "rescission of the Asset Purchase Agreement and restitution of the amounts Genius paid to LZGI thereunder," Reply 2 at 3, is immaterial to the Court's assessment of its own authority.  In view of "the ultimate relief [Genius] seeks," *Leadenhall*, 171 F.4th at 163, this case bears nothing more than a specious resemblance to *Deckert*, 311 U.S. 282.  *See* Reply 2 at 2 (citing *Deckert*, 311 U.S. at 287–88).  There, "[t]he principal objects of the suit [were] rescission of . . . contracts and restitution of the consideration paid."  *Id.* at 289.  Before this Court, Genius seeks confirmation of an arbitral award and, as relevant here, a consequent money judgment.  Pet. at 8.

---

[6] The TRO Application in no way concerns that portion of the Final Award that ordered LZGI "to remit to [Genius] the 7,387,374 . . . shares of [Genius] common stock that [LZGI] received pursuant to the Asset Purchase Agreement," Final Award ¶ 375(e).  *Leadenhall*, 171 F.4th at 159 n.3 ("[W]e . . . limit our review to the basis of the District Court's injunction, which is Leadenhall's contract claims.").  Indeed, those shares are already under preliminary injunction. *See* the Stayed Action, [ECF No. 99] at 16.

"Granted, when it comes to monetary relief, construing the character of that final relief as either legal or equitable can sometimes require a 'fine distinction.'" *Leadenhall*, 171 F.4th at 164 (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214–15 (2002)). But litigation over "the enforceability of an arbitral award" is essentially a "quarrel[] about . . . [a] contract[]." *Badgerow v. Walters*, 596 U.S. 1, 9 (2022). And "[a] claim for money due and owing under a contract is quintessentially an action at law." *Knudson*, 534 U.S. at 210 (quotation omitted).

## **CONCLUSION**

Accordingly, the TRO is VACATED, and Genius' request for a preliminary injunction is DENIED. The Clerk of Court is respectfully requested to terminate docket entries twenty and thirty-two.

**Date:   June 17, 2026**       **MARY KAY VYSKOCIL**
       **New York, NY**       **United States District Judge**